UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ARLENE VILLAMIA DRIMAL, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | 3:12-cv-00717-WWE |
| | : | |
| DAVID MAKOL, JAN TRIGG, | : | |
| PAULINE TAI, FRANK LOMONACO, | : | |
| DAVID J. FORD, EDMUND ROM, | : | |
| KEVIN RIORDAN, ADRIAN BUSBY, | : | |
| BRIAN HARKINS, JOANN MAGUIRE, | : | |
| MARIA A. FONT, MARTHA M. BERDOTE, | : | |
| THOMAS J. D'AMICO, MARK MUNSTER, | : | |
| CHRISTOPHER DEGRAFF, S. MENDOZA- | : | |
| PENAHERRERA, | : | |
| Defendants. | : | |

**MEMORANDUM OF DECISION ON
DEFENDANTS' MOTIONS TO DISMISS THE AMENDED COMPLAINT**

Plaintiff Arlene Villamia Drimal alleges that defendants, sixteen FBI agents, intercepted

intimate personal telephone conversations between plaintiff and her husband in violation of Title

III, 18 U.S.C. § 2510 *et seq.*; Connecticut General Statutes § 52-570d; and the First, Fourth,

Ninth and Fourteenth Amendments to the United States Constitution.

Defendants argue that they are entitled to qualified immunity and that plaintiff's

allegations are impermissibly conclusory.  In addition, defendants move to dismiss plaintiff's

constitutional claims as precluded by the existence of a statutory remedy.  Finally, defendants

contend that Connecticut General Statutes § 52-570d is inapplicable to the circumstances of this

case.  For the following reasons, defendants' motions will be granted in part and denied in part.

**BACKGROUND**

As part of an investigation into a conspiracy to commit securities fraud, the FBI

performed an authorized wiretap on the telephone of plaintiff's husband.  The Honorable Richard

Sullivan tried the underlying criminal case.  See U.S. v. Goffer, 756 F. Supp. 2d 588 (S.D.N.Y. 2011).  There, plaintiff's husband moved to suppress the entire wiretap on the basis that the government had failed to properly minimize marital calls.  From November 16, 2007, to January 15, 2008, agents intercepted approximately 180 calls between plaintiff and her husband.  "None of these calls provided agents with any incriminating evidence relating to the charges in [the underlying criminal case].  To the contrary, [plaintiff's] marital conversations dealt almost exclusively with personal and family matters.  Indeed, in several calls agents listened as [plaintiff and her husband] carried on discussions of a deeply intimate nature."  Goffer, 756 F. Supp. 2d at 591.  Although Judge Sullivan found some of defendants' monitoring troublesome, he denied suppression of the wiretap evidence.

After this Court declined to dismiss plaintiff's original complaint, the Second Circuit remanded based on two deficiencies in this Court's prior ruling.  First, the Court should have been more stringent in evaluating the plausibility of plaintiff's wiretap claims.  Plaintiff asserted in a conclusory fashion that intercepting marital calls violated Title III without any reference to a duty to minimize.  To survive a motion to dismiss, plaintiff's amended complaint must include facts alleging how each defendant failed to comply with his or her duty to minimize.  Second, in evaluating defendant's claims of qualified immunity, this Court ruled on all the defendants as a single group instead of evaluating plaintiff's claims against each defendant individually.  While issues related to qualified immunity frequently must await a motion for summary judgment, the Second Circuit found that "[a] putative amended complaint, pleaded with the requisite specificity based on the hearing before Judge Sullivan, likely would enable the district court to address qualified immunity issues, at least in part, at the pleading stage."  The Second Circuit took

judicial notice of government exhibit 30, featured at the suppression hearing in the criminal case, which makes it apparent that different defendants responded differently to their duty to minimize. This Court now takes judicial notice of government exhibit 30 for purposes of its qualified immunity analysis.

**Qualified Immunity**

Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To lose immunity, an official must violate a right, the contours of which are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

The Second Circuit held that the district court, in its qualified immunity analysis, should assess the "reasonableness of the agents' minimization efforts as they relate to each defendant." Drimal v. Tai, 786 F. 3d 219, 221 (2d Cir. 2015). The Court must evaluate each agent's minimization efforts under an "objective reasonableness" standard to determine whether each defendant "would understand that what he is doing violates" Title III's minimization requirement. See Scott v. United States, 436 U.S. 128, 138 (1978); Anderson, 438 U.S. at 640.

> Because of the necessarily ad hoc nature of any determination of reasonableness, there can be no inflexible rule of law which will decide every case. The statute does not forbid the interception of all nonrelevant conversations, but rather instructs the agents to conduct the surveillance in such a manner as to "minimize" the interception of such conversations. Whether the agents have in fact conducted the wiretap in such a manner will depend on the facts and circumstances of each case.
>
> ***

3

Other factors may also play a significant part in a particular case. For example, it may be important to determine at exactly what point during the authorized period the interception was made. During the early stages of surveillance the agents may be forced to intercept all calls to establish categories of nonpertinent calls which will not be intercepted thereafter. Interception of those same types of calls might be unreasonable later on, however, once the nonpertinent categories have been established and it is clear that this particular conversation is of that type. Other situations may arise where patterns of nonpertinent calls do not appear. In these circumstances it may not be unreasonable to intercept almost every short conversation because the determination of relevancy cannot be made before the call is completed.

Scott, 436 U.S. at 139-41.

At the initial pleadings stage of this case, the facts and circumstances of defendants' interception of plaintiff's calls have not been fully explored by this Court. Nevertheless, prior to commencement of the wiretap, it should have been evident that the marital calls at issue fall into an established category of nonpertinent calls, as the privileged communications were apparently invariably innocent and did not deal with ongoing violations of law. Indeed, the wiretap instructions provided to the FBI by the Supervising Assistant United States Attorney included the following provisions, which establish that such communications lie outside the scope of the agents' authorization:

You should listen to the beginning of each communication only so long as is necessary to determine the nature of the communication and, in any case, no longer than a few minutes unless the communication is "pertinent," that is, within the scope of our authorization.... If *you determine that the communication is not a Criminal Communication, turn the machine off.*

\*\*\*

If, after several days or weeks of interception, we have learned that communications between one or more of the TARGET SUBJECTS and a particular individual or individuals are invariably innocent, non-crime related matters, then a "pattern of innocence" exists and such communications should not be recorded, listened to, or even spot monitored, once such an individual has been identified as a party to the communication.

4

\*\*\*

> There is also a privilege concerning communications between spouses. You are to discontinue monitoring if you discover that you are intercepting a personal communication solely between husband and wife. If it appears that a third person is present during this communication, however, the communication is not privileged. So, too, if the communication deals not with private matters between husband and wife, but instead with ongoing as opposed to past violations of law, it is not a privileged communication.

Goffer, 756 F. Supp. 2d at 590-91 (emphasis in original).

Pursuant to the Supervising AUSA's instructions, agents were not authorized to listen personal communications solely between husband and wife unless the communication dealt with ongoing violations of law. Moreover, communications between plaintiff and her husband were apparently invariably innocent, non-crime related matters, establishing a "pattern of innocence." See id. at 591 ("None of these calls provided agents with any incriminating evidence relating to the charges in this case."). Once a sufficient pattern of innocence revealed itself, such communications should not have been recorded, listened to, or even spot monitored. See id. at 590; Scott, 436 U.S. at 141.

Nevertheless, defendants are entitled to qualified immunity if their conduct did not violate clearly established statutory or constitutional rights, or if it was objectively reasonable for them to believe their acts did not violate those rights. See Southerland v. City of New York, 680 F. 3d 127, 141 (2d Cir. 2011).

The FBI monitored approximately 180 calls between plaintiff and her husband. The calls dealt almost exclusively with personal and family matters, and several were of an intimate nature. Goffer, 756 F. Supp. 2d at 591. After reviewing the content of the calls themselves, the

Honorable Richard J. Sullivan found that several of *plaintiff's marital conversations were improperly minimized* and highlighted eight conversations that were potentially violative of Title III's minimization requirement.  Id. at 594 (emphasis added).  Judge Sullivan was "deeply troubled by this unnecessary, and apparently voyeuristic, intrusion into the Drimals' private life."  Id.

> [F]or at least portions of the wiretap, the government failed to take appropriate steps to ensure that unnecessary intrusions into the private lives of its targets were kept to a minimum.  While the majority of these calls were not particularly lengthy—indeed, most were under two minutes—in each of these calls it should have been apparent within seconds that the conversation was privileged and non-pertinent.  As the Court stressed at the hearing, given the deeply personal nature of several of these conversations, the agents' failure to minimize was nothing short of "disgraceful."

Id.

The government's failure to ensure unnecessary intrusions into the private lives of its targets (and innocent non-targets such as plaintiff) runs in direct violation of Title III's mandate that the authorization to intercept "shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception."  18 U.S.C. § 2518(5).  Moreover, Title III explicitly authorizes recovery of civil damages to any person whose communication is intercepted in violation of the Wiretap Act.  18 U.S.C. § 2520.  Here, after holding a hearing on the matter, Judge Sullivan found that the agents' failure to minimize was "nothing short of disgraceful."  Although defendants' violations were held insufficient to demonstrate the type of pervasive disregard of the minimization requirement that would warrant total suppression of the wiretap evidence in the underlying criminal case, such a ruling in no way precludes implementation of the statutory civil remedy designed by Congress to provide "recover[y] from the person or entity . . . which engaged in that violation."  See 18 U.S.C. §

2520.  Based on the hearing conducted by Judge Sullivan and his subsequently issued

Memorandum and Order, it is plainly evident that some agents violated plaintiff's clearly

established statutory and constitutional rights.  To preclude a plaintiff from seeking relief under

these circumstances would be to nullify Title III's damages provision.

  For purposes of qualified immunity analysis, the "objectively reasonable" inquiry is part

of the "clearly established" inquiry.  Okin v. Village of Cornwall-On-Hudson Police Dept., 577

F. 3d 415, 433 n.11 (2d Cir. 2009).  If plaintiff's rights are clearly established at the time of the

alleged violative conduct, belief that such conduct was lawful is necessarily objectively

unreasonable.  Nagle v. Marron, 663 F. 3d 100, 115 (2d Cir. 2011).  "The subjective good faith

of government officials plays no part in the inquiry."  Id. at 114.

> Thus, once a court has found that the law was clearly established at the time of the
> challenged conduct and for the particular context in which it occurred, it is no
> defense for a police officer who violated this clearly established law to respond that
> he held an objectively reasonable belief that his conduct was lawful. This is so
> because a police officer who violates clearly established law necessarily lacks an
> objectively reasonable belief that his conduct was lawful. We clarify here that the two
> are part of the same inquiry, not independent elements as some cases suggested.

Okin, 577 F. 3d at 433.

  While issues related to qualified immunity frequently must await a motion for summary

judgment, the Second Circuit has instructed the Court to discern, to the extent possible, the

"reasonableness of the agents' minimization efforts as they relate to each defendant."  Drimal,

786 F. 3d at 221.

  After reviewing the testimony and evidence presented at the hearing, as well as the calls

themselves, Judge Sullivan highlighted eight interceptions that were potentially violative of Title

III's minimization requirement.  Goffer, 756 F. Supp. 2d at 594-95.  In light of that holding and

after taking judicial notice of government exhibit 30 from the underlying criminal case [ECF No. 154-1] (1:10-cr-00056-RJS), the Court finds that defendants are not entitled to qualified immunity as a matter of law with respect to those eight potentially violative interceptions.  Based on the facts presented, agents would have understood that what they were doing may have violated Title III's minimization requirement, and considering Judge Sullivan's findings, it would not be objectively reasonable for them to believe their acts were lawful.  See Nagle 663 F. 3d at 114 ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted.").  The potentially improper interceptions include: Sessions 5806, 5808, 5809, 5828 (LoMonaco); Sessions 5710, 5874, 5875 (Rom); and Session 5945 (Ford).

Defendants Makol, Trigg, Tai, Riordan, Busby, Harkins, Maguire, Font, Berdote, D'Amico, Munster, DeGraff, and Mendoza-Penaherrera are entitled to qualified immunity, as the nature and timing of their interceptions appear to be objectively reasonable, and Judge Sullivan found their minimization practices conformed with Title III's minimization requirement.

**Sufficiency of Amended Complaint**

The sufficiency of a complaint is measured against the plausibility standard established by the Supreme Court and Rule 8, which asks, leaving aside assertions that are no more than legal conclusions, whether the complaint's factual allegations make a right to redress plausible. Iqbal, 556 U.S. at 678-81.  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Id. at 679.  This pleading standard "does not require detailed factual allegations."  Id. at 678.

8

18 U.S.C. § 2518 governs procedure for interception of wire communications and provides that agents must "minimize the interception of communications not otherwise subject to interception."  18 U.S.C. § 2518(5).  The Second Circuit held that plaintiff's prior complaint failed to plausibly allege a violation of law because she recited only legal conclusions, and the requirement that interception in accordance with Title III be "minimized" could not be gleaned from her complaint.  Plaintiff's amended complaint now explicitly quotes Section 2518(5)'s minimization requirement and alleges that defendants violated rights secured to plaintiff by Section 2518.  The amended complaint notes that Judge Sullivan described defendants' conduct as "disgraceful," "egregious," and "voyeuristic," and lists the call date, call duration, and defendant who intercepted each communication.  The Court finds that, with respect to the eight potentially violative interceptions, plaintiff has stated a claim that is plausible on its face.

**Plaintiff's Constitutional Claims**

Plaintiff withdraws her constitutional claims, so they will be dismissed.

**Connecticut General Statutes § 52-570d**

Defendants argue that the Court should dismiss plaintiff's state statutory claims, asserting that Section 52-570d, which governs illegal recording of private telephonic communications, does not apply to law enforcement officers acting in the course of their duties.  However, the statute provides safe harbor to law enforcement officials only where recording of communications is done in the *lawful* performance of their duties.

Nevertheless, other than (1) a *Bivens* action, seeking damages for a constitutional violation by a government employee; or (2) an action under a federal statute that authorizes recovery against a government employee, the Federal Tort Claims Act is the exclusive remedy

against a government employee based upon a wrongful act or omission of that employee.  See 28

U.S.C. § 2679; U.S. v. Smith, 499 U.S. 160, 165-67 (1991).  Accordingly, the Court will dismiss

plaintiff's state statutory claims.

### CONCLUSION

For the foregoing reasons, defendants' motions to dismiss [ECF Nos. 42 and 43] are

GRANTED in part and DENIED in part.  All claims against defendants Makol, Trigg, Tai,

Riordan, Busby, Harkins, Maguire, Font, Berdote, D'Amico, Munster, DeGraff, and Mendoza-

Penaherrera are dismissed based upon qualified immunity.  Plaintiff has withdrawn her

constitutional claims.  Plaintiff's state statutory claim is dismissed.  Plaintiff's federal statutory

claims remain as to defendants LoMonaco, Rom, and Ford.

Dated this 6th day of July, 2016, at Bridgeport, Connecticut.


    /s/Warren W. Eginton
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE